In the Matter of ETHEL D. JACOBS, Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, et al., Respondents.

First Department, December 8, 1953.

*Samuel Brand* of counsel (*Jerome J. Fendrick* and *Samuel Brand,* attorneys), for petitioner.

*Alvin H. Kaufer* of counsel (*Stanley Buchsbaum* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for respondents.

BERGAN, J. The question here is whether a horse entered in a claiming race is subject to a use tax. The practices followed in claiming races thus becoming open to judicial inquiry, we look first of all to the record to see more clearly what are the technicalities of " a claiming race ".

There we are advised from well-informed testimony that a claiming race is one in which every horse is entered at a price and " may be claimed for its entered price by an owner registered in good faith for racing at that meeting ".

We are further advised that such a race is one where " all the horses in the race are entered with a sale price put on them * * * advertised in the racing forms and also on the programs."

It is stipulated that in a claiming race the owner of the horse keeps any purse won in the race even though the horse is claimed; that the first four horses share the purse; and that

horses that have been run in claiming races may be run in other than claiming races.

It is agreed also that at least 50% of the races at the New York tracks are claiming races and that the ratio of horses entered to horses actually claimed in these races is over 25 to 1 (8,454 to 322 in 1950).

The tax involved is imposed by title M of chapter 41 of the Administrative Code of the City of New York and is a " compensating use tax " supplemental to the sales tax imposed on the sales of tangible personal property (Administrative Code of City of New York, § N41–2.0). The use tax found in section M41–16.0 imposes a tax on " the use within the city " of any tangible personal property purchased at retail.

The use tax applies to property purchased outside the city but used within the city. What is a " Use " is defined by subdivision 1 of section M41–15.0 as the exercise of any right or power over tangible personal property by the purchaser thereof. What is meant by " Purchase at retail " is defined by subdivision 4 of section M41–15.0 as a purchase " for any purpose other than for resale ".

Petitioner Ethel D. Jacobs is a well-known owner of race horses. Petitioner obtained title to two horses by claiming them in Florida claiming races during January and February, 1950. The horses, Lady Alice and Fox Ring, are the tangible personal property on which the use tax has been imposed by the respondent as comptroller.

The two horses were brought to New York City by the petitioner and entered in claiming races. Lady Alice ran in four claiming races in New York City before being claimed. This horse won one race and came in second in another. It was claimed from the petitioner for $7,500. Fox.Ring ran in three claiming races in New York City and was thereafter claimed in a race in California.

There can be little doubt that when a horse is purchased outside of the city of New York and is run in a race within the city that this utilization is such an exercise of right or power over tangible personal property as to constitute a " use " within the intent with which this word was employed in the statute. Inquiry then turns to whether the purchase of a horse by a claim or otherwise and its later use in claiming races is a purchase " for any purpose other than for resale ".

The converse of this exclusionary statement, i.e., purchases " for resale ", sweeps in all ordinary commercial transactions where goods are bought solely for wholesale or retail trade.

But the way the language runs makes the legislative purpose reasonably clear to exempt only property then solely used for resale because " any purpose " would include all purposes generally. The words " other than " narrow the exempted purpose down to the singular. It would seem reasonable to think that using the property for resale and some other purpose or purposes would not carry with it the singular exemption created by this statute.

This record suggests to us that there is more to a claiming race than just a resale of horses. There is the desire to win races; to receive prizes and to test training and breeding. There are in such races all of the other dynamic incentives that underlie this dramatic sport. It has been seen that statistically the ratio of claims to entries in this type of race is very small.

A horse owner who has the full right to enter a horse in other than claiming races as well as in claiming races and who has the horse available within the tax area has some additional difficulty in showing the horse is in the tax area solely for resale where the stipulated fact is that about half the races in the area are not claiming races. We think we are not required to say on the record before us that the petitioner utilized these two horses in New York entirely " for " resale.

It would require more than a merely debatable question to require us to hold that the comptroller was so wrong in his judgment about the application of the statute in this field of taxation that judicial interference would be warranted. What he did in applying the tax to petitioner's horses seems quite consistent with the way similar statutes are construed elsewhere (cf. Florida Sales and Use Tax, Rule No. 70, 1 CCH All-State Sales Tax Reporter, § 30–570; Maryland Retail Sales and Use Tax Rules, Rule No. 71, 2 CCH All-State Sales Tax Reporter, § 42–574, and Attorney General Opinions, California and West Virginia, 1 CCH All-State Sales Tax Reporter, §§ 2–025.09, 2–025.54).

The determination should be confirmed, with $20 costs and disbursements to respondents.

PECK, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Determination unanimously confirmed, with $20 costs and disbursements to the respondents.